IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF

       v.          Civil No. 07-50032

JIMMIE JAY LAWSON                                     DEFENDANT

**O R D E R**

On July 19, 2007, the Court conducted a hearing on Defendant's **Motion to Suppress (Doc. 8)**. The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

**BACKGROUND**

1.   On June 15, 2004, a search warrant was issued authorizing officers of the Bentonville Police Department to search the defendant's residence for evidence that he was in possession of child pornography. Upon execution of the search warrant, officers seized two computers from the defendant's residence. Still images of children under the age of 18 who were engaged in sexually explicit conduct were found on the computers.

2.   On June 22, 2004, FBI Special Agent Scott Ledford and Bentonville Police Department Detective Mark Jordan went to the defendant's residence to interview him about the matter. During the interview, the defendant admitted that he had downloaded child pornography onto his computer.

3.   On May 9, 2007, an indictment was filed charging the defendant with knowingly possessing a computer which contained

visual depictions, transported in interstate and foreign commerce, of a child engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

4.    On June 14, 2007, the defendant filed the motion now before the Court, seeking to suppress the statements he made when interviewed by Agent Ledford.   Defendant argues that the statements should be excluded because he had not been advised of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).   The Government responds that <u>Miranda</u> warnings were not required because the defendant was not in custody during the interview.

5.    At the hearing on the motion to suppress, Agent Ledford testified to the following:

*    Detective Jordan contacted Agent Ledford after the execution of the search warrant on the defendant's residence and asked for Agent Ledford's assistance in investigating the case and in conducting a forensic examination of the computers seized from the defendant's residence.

*    The forensic examination revealed images of child pornography on both computers and, on June 22, 2004, Agent Ledford and Detective Jordan went to the defendant's residence to interview both him and his fiancee, Sandra Nadeau, about the matter.   Agent Ledford acted as the lead investigator and interviewing agent.

* Upon arriving at the residence, Agent Ledford advised the defendant and Ms. Nadeau that he was there to interview them regarding the search warrant that had been executed at their residence and the images found on their computers.

* Agent Ledford asked the defendant if he would be willing to answer questions about the matter and advised him that he did not have to do so.  Agent Ledford advised the defendant that the Court and the United States Attorney would look favorably upon the defendant's cooperation, but that he could not make him any promises.  Agent Ledford also advised the defendant that, regardless of what he said during the interview, Agent Ledford did not intend to arrest him.

* According to Agent Ledford, the defendant was polite and cooperative, invited the officers in, and stated that he wanted to explain his side of the matter.  Agent Ledford advised the defendant that he wished to interview him separately from Ms. Nadeau and asked if there was somewhere he and the defendant could sit and talk.  The defendant then led Agent Ledford and Detective Jordan into the dining room.

* The interview lasted less than an hour and the defendant was not arrested at the conclusion of the interview.  The defendant never indicated that he wanted to cease the interview and his freedom of movement was not restricted in any way during the interview.  Additionally, no threats were made against the

-3-

defendant and neither Agent Ledford nor Detective Jordan displayed their weapons.

6.    The defendant testified that he did not recall Agent Ledford advising him that he did not have to answer his questions. The defendant denied telling Agent Ledford that he wanted to tell his side of the situation.  The defendant explained that he would not have talked to Agent Ledford had he known he had the right to refuse to do so.  The defendant testified that while Agent Ledford advised him that he would not be arrested, the defendant did not believe him.  The defendant acknowledged that the officers were not rude and did not verbally or physically threaten him in any way, but testified that he did not feel like he was free to leave. The defendant testified that after the interview was concluded, he went into the living room and Agent Ledford then interviewed Ms. Nadeau.

### DISCUSSION

7.    <u>Miranda</u> requires that law enforcement agents provide certain prescribed warnings before conducting an interrogation of a suspect who "'has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" <u>United States v. New</u>, 2007 WL 2049711, at *2 (8th Cir. July 18, 2007), <u>quoting</u> <u>Miranda</u>, 384 U.S. at 444.  The "'ultimate inquiry'" in determining whether a suspect is in custody "'is simply whether there is a formal arrest or restraint on freedom of movement of the degree

-4-

associated with formal arrest.'"  <u>New</u>, 2007WL 2049711, at *2 , <u>quoting</u> <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (per curiam).  The custody inquiry thus turns on whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and ask the agent to leave.  <u>See</u> <u>New</u>, 2007WL 2049711, at *2, <u>citing</u> <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995).

8.  In <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit Court of Appeals outlined the factors to be considered in determining whether a suspect is in custody:

(A)  whether the officer informed the suspect the questioning was voluntary, and the suspect was free to leave and was not under arrest;

(B)  whether the suspect had unrestrained freedom of movement during the questioning;

(C)  whether the suspect contacted the authorities or voluntarily agreed to official requests to answer questions;

(D)  whether the officers employed strong-arm tactics or deceptive stratagems during questioning;

(E)  whether the atmosphere of the interrogation was police dominated; and

-5-

(F)   whether the suspect was placed under arrest at the end of questioning.

9.   The Court credits Agent Ledford's testimony that he advised the defendant that he did not have to answer his questions and that he was not going to be arrested.  In <u>Griffin</u>, the Eighth Circuit observed that "[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody ... is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will."  <u>Id.</u> at 1349.

10.   The Court also credits Agent Ledford's testimony that the defendant's movement was not restricted in any way.  This is corroborated by the fact that the defendant was allowed to go into another room at the conclusion of the interview.  Further, the fact that the defendant was interviewed in his own home weighs against an inference that he was in custody.  The Eighth Circuit has observed repeatedly that when a person is questioned at his home – "'on his own turf'" – the surroundings are "'not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'"  <u>United States v. Czichray</u>, 378 F.3d 822, 826 (8th Cir. 2004), <u>cert. denied</u>, 544 U.S. 1060 (2005) (internal citations omitted).

11.   The Court also finds it significant that the interview lasted less than one hour; that the officers did not verbally or

-6-

physically threaten the defendant or display their weapons; and that the defendant was not arrested at the conclusion of the interview.

## CONCLUSION

12. Based on the foregoing, the Court concludes that the defendant was not in custody during the interview and that <u>Miranda</u> warnings, therefore, were not required.

13. Accordingly, the defendant's **Motion to Suppress (Doc. 8)** is **DENIED**.

IT IS SO ORDERED this 20th day of July, 2007.


<u>/S/JIMM LARRY HENDREN</u>
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE